LAPEER COUNTY ABSTRACT & TITLE COMPANY
v LAPEER COUNTY REGISTER OF DEEDS

Docket Nos. 245911, 245912. Submitted September 8, 2004, at Detroit.
Decided October 21, 2004, at 9:05 a.m. Leave to appeal sought.

Lapeer County Abstract and Title Company and its president, Don
Schultz, brought an action in the Lapeer Circuit Court against the
Lapeer County Register of Deeds (hereinafter the defendant),
Lapeer County, and the Lapeer County Board of Commissioners,
seeking declaratory relief relating to a decision by the defendant
that would eliminate providing microfilm copies or providing
paper copies of recorded instruments at a discounted bulk rate fee
to the plaintiffs unless the plaintiffs contractually agreed to not
provide copies to third parties. Plaintiffs alleged that the nondis-
semination requirement demanded by the defendant violated the
inspection of records act (IORA), MCL 565.551, that the defen-
dant's decisions regarding medium and fees violated the Freedom
of Information Act (FOIA), MCL 15.231 *et seq.*, and that the
defendant's $1 a copy fee demand violated the Headlee amend-
ment, Const 1963, art 9, § 31. On cross-motions for summary
disposition, the court, Nick O. Holowka, J., determined that, with
regard to the IORA claim, the defendant could supply paper copies
instead of microfilm copies, but could not restrict how the copies
would be used, and determined that, with regard to the FOIA and
Headlee claims, the defendant prevailed. The defendants appealed
the portion of the order prohibiting the limitation of how the
records supplied could be used. The plaintiffs appealed the por-
tions of the order allowing paper copies instead of microfilm and
rejecting the FOIA and Headlee amendment claims.

The Court of Appeals *held*:

1. MCL 565.551, the IORA, establishes the statutory back-
ground for a party to obtain copies of records from the office of a
register of deeds. MCL 600.2567(1)(b) provides that a register of
deeds is entitled to a fee of $1 for each copy of any records or
papers. MCL 45.3 and 46.11 allow a county government to enter
contracts, such as the quid pro quo contract proposed by the
defendant, i.e., a lower fee or option of medium for a nondissemi-
nation agreement. The powers of counties are to be interpreted

liberally in their favor. For these reasons, the defendant had the authority to propose and enter into the type of contractual arrangement at issue here, i.e., providing a bulk rate or microfilm copies in return for a promise by plaintiffs to not provide copies to third parties.

2. A paper photocopy of a microfilm record is a photographic copy of the microfilm record itself. Even if the FOIA were to require in general that a public body must provide a microfilm copy of a record where the original of the record is kept by the public body on microfilm, the IORA overrides the FOIA as a more specific statute. The IORA leaves the medium for supplying records to the discretion of the register of deeds. The register of deeds may provide paper copies notwithstanding any general requirement of the FOIA to the contrary.

3. The Headlee Amendment prohibits a unit of local government unit from raising taxes without a vote of the electors of that unit. A tax involves an essentially mandatory assessment imposed by a governmental entity either on property owned by a party or on a transaction engaged in by a party. The voluntary sale and purchase of copies of records from the office of the register of deeds does not involve the imposition of a tax. In general, a fee may become a tax when the revenue generated by the fee exceeds the cost of the service. In this case, the $1 fee authorized to be charged for each copy is statutory and is a direct, voluntary purchase price of a copy, not a regulatory fee or a tax. The copy fee does not implicate the Headlee Amendment.

Affirmed in part, reversed in part, and remanded for entry of an order of summary disposition for the defendants.

1. REGISTERS OF DEEDS — DOCUMENT COPIES — BULK RATES — MEDIA.

A register of deeds may contract with another party for a lower bulk rate or different medium for copies of documents in the office of the register of deeds in exchange for the party's promise not to provide the copies to third parties (MCL 45.3, 46.11, 565.551, 600.2567[1][b]).

2. REGISTER OF DEEDS — DOCUMENT COPIES — MEDIA — FREEDOM OF INFORMATION ACT.

The inspection of records act allows a register of deeds to provide copies of documents in its possession in whatever medium the register chooses notwithstanding any general requirement in the Freedom of Information Act to the contrary (MCL 15.231 *et seq.*, 565.551).

3. REGISTER OF DEEDS — DOCUMENT COPY FEES — HEADLEE AMENDMENT.

The statutory fee for copies of documents in a register of deeds office is neither a fee that generates net revenue nor a tax subject to the Headlee Amendment (Const 1963, art 9, § 31; MCL 600.2567[1][b]).

*Plunkett & Cooney, P.C.* (by *Jeffrey C. Gerish* and *Patricia Irving Cwiek*), for the plaintiffs.

*Johnson, Rosati, LaBarge, Aseltyne & Field, P.C.* (by *Marcia L. Howe*), for the defendants.

Amici Curiae:

*Michael J. Hagerty* for the Michigan Land Title Association.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Michael J. Hodge* and *Robert A. LeFevre*), for the Michigan Association of Registers of Deeds.

Before: SCHUETTE, P.J., and BANDSTRA and METER, JJ.

BANDSTRA, J. This case presents questions of law regarding the authority of a county register of deeds to provide copies of real estate records it maintains to members of the public. The specific question raised is whether a register of deeds may condition the sale of such copies in microfilm format or at a reduced bulk rate on the purchaser's contractual agreement that it will not provide copies of the records to third parties. We hold that a county register of deeds has the authority to enter into such a contract under the statute pertaining to inspection of records in a register of deeds office, MCL 565.551, and related statutes. Further, we hold that the actions by the county of register of deeds here were not in violation of either the Headlee Amendment, Const 1963, art 9, § 31, or the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*

BACKGROUND FACTS

The critical facts are essentially undisputed. Before the fall of 2001, plaintiffs were allowed to purchase paper copies of records from defendant Lapeer County Register of Deeds[1] office at a discounted bulk rate. However, in the fall of 2001, when plaintiffs sought to obtain microfilm copies, defendant refused to provide microfilm copies or the discounted bulk price unless plaintiffs would agree to a contract that included a restriction against their providing copies of the records obtained to third parties. The practical effect of this was apparently that plaintiffs could, like any member of the general public, obtain paper copies of records from defendant at the ordinary price, i.e., without a bulk rate discount, with no restriction on providing copies to third parties, but that they could not obtain microfilm copies or the benefit of a bulk rate price without agreeing to the proposed contract. Also, on December 7, 2001, plaintiffs made a request under the FOIA for microfilm copies of instruments recorded in defendant's office. Defendant denied this request.

Plaintiffs filed a complaint alleging, in pertinent part,[2] that defendant (1) violated MCL 565.551, the inspection of records act (IORA),[3] by refusing to provide plaintiffs with microfilm copies of records, (2) violated the FOIA by denying plaintiffs' FOIA request, and (3)

---

[1] Plaintiffs also name Lapeer County and the Lapeer County Board of Commissioners as defendants, but only because they have authority over, and approved the actions taken by, the register of deeds. Only the actions of the register of deeds are at issue here and we will refer to it as "defendant" unless otherwise noted.

[2] The complaint also alleged an antitrust violation and a violation of federal constitutional rights contrary to 42 USC 1983, but those claims are not at issue in this appeal.

[3] The text of MCL 565.551 does not include a title. It is captioned "Inspection of Records" in the Michigan Complied Laws Service.

violated the Headlee Amendment, Const 1963, art 9, § 31, by charging fees for copies of documents that greatly exceeded the cost of providing the copies. These claims were decided on cross-motions for summary disposition.

With respect to the IORA claim, the trial court's order stated that defendant was allowed to respond to requests for records under MCL 565.551 by providing paper copies and that it was not required to provide microfilm copies. The order further prohibited defendant from conditioning the provision of records on how they could be used.[4] Defendant appeals the latter part of this order.

The trial court granted summary disposition in favor of defendant on the FOIA and Headlee claims. In their cross-appeal, plaintiffs challenge those decisions and also challenge the portion of the trial court order allowing defendant to provide paper, rather than microfilm, copies of records.

### STANDARD OF REVIEW

We review de novo the grant or denial of a motion for summary disposition. *Monat v State Farm Ins Co*, 469 Mich 679, 682; 677 NW2d 843 (2004). Similarly, statutory interpretation is a question of law that we review de novo. *Golf Concepts v Rochester Hills*, 217 Mich App 21, 26; 550 NW2d 803 (1996).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). Statutory language should be con-

---

[4] The order also provided that, if defendant provided microfilm copies to any person or entity, it could not decline other requests for microfilm copies. Defendant does not contest that provision on appeal.

strued reasonably, keeping in mind the purpose of the act. *Draprop Corp v City of Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001). The first criterion in determining legislative intent is the specific language of the statute. *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997). "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written." *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001). "In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory." *Id.*

### ANALYSIS

#### A. THE IORA AND RELATED COUNTY AUTHORITY STATUTES

In connection with the alleged violation of the IORA, MCL 565.551, the trial court stated that "administrative authority must be affirmatively or plainly granted, for doubtful power does not exist" and that defendant "failed to point to any provision in [MCL 565.551] that authorizes [it] to impose any condition on the post sale use of the copied records." The trial court also stated that defendant "implicitly acknowledge[d] that there is no legal reason to impose any restriction on the resale of copies" because it allowed resale of paper copies of the records. The trial court concluded that, while defendant has no duty to sell microfilm copies, it has no authority to impose any restriction on their resale if it does so.

As noted earlier, defendant challenges this order because it limits defendant's ability to enter into "special arrangements" with customers, like plaintiffs, who want bulk rate paper copies or microfilm copies of

records. Specifically, defendant challenges the provision of the order disallowing contracts by which purchasers are required to agree not to reproduce purchased copies for others to use. On the other hand, plaintiffs argue that the order impermissibly allows defendant to provide paper, not microfilm, copies of records.

The following provisions establish the statutory background for a party to obtain copies of records from a register of deeds office. The IORA provides:

> (1) A register of deeds shall furnish proper and reasonable facilities for the inspection and examination of the records and files in his or her office, and for making memorandums or transcripts from the records and files during the usual business hours, to an individual having a lawful purpose to examine the records and files. However, the custodian of the records and files may make reasonable rules and regulations with reference to the inspection and examination of the records and files as is [sic, are] necessary to protect the records and files and to prevent interference with the regular discharge of the duties of the register of deeds.

> (2) If an individual requests a reproduction of a record or file of a register of deeds, the register of deeds shall do 1 of the following, at the register of deeds' option:

> (a) Reproduce the record or file for the individual pursuant to the records media act, [MCL 24.401 to MCL 24.403], using a medium selected by the register of deeds. Unless a different fee is provided for by law, the fee for a reproduction under this subdivision other than a paper copy shall not exceed the reasonable costs to the register of deeds.

> (b) Provide equipment for the individual to reproduce the record or file pursuant to [MCL 24.401 to 24.403], using a medium selected by the register of deeds. Unless a different fee is provided for by law, the fee for a reproduction under this subdivision other than a paper copy shall not exceed the reasonable costs to the register of deeds.

(c) Authorize the individual to reproduce the record or file on the premises using equipment provided by that individual. This subdivision does not apply unless the individual requests authorization to reproduce the record or file using equipment provided by that individual.

(3) A register of deeds may prohibit the reproduction of an instrument temporarily left with the register of deeds to be recorded in the register of deeds' office. [MCL 565.551.]

In addition, the Revised Judicature Act, MCL 600.2567(1)(b), provides that a register of deeds "is entitled" to a fee of "$1.00 per page" for "copies of any records or papers."

It appears to be undisputed that at all relevant times plaintiffs, like any member of the general public, could obtain paper copies of records from defendant at this $1 a page cost without agreeing to any restriction on the use of copies so obtained. The first issue we consider is whether defendant may condition the bulk sale of copies at a reduced rate or the sale of microfilmed copies on a party agreeing to restrictions on the uses of records purchased.

Defendant first argues that special arrangements of the type at issue constitute "reasonable rules and regulations" permitted by MCL 565.551(1). We disagree. As set forth above, MCL 565.551(1) generally pertains only to the in-office inspection of records, while subsection 2 pertains to the reproduction of these records. More specifically, the "reasonable rules and regulations" language, on which defendant relies, only pertains "to the inspection and examination of [] records," not their reproduction and distribution. By its plain meaning, this language only grants a power to make reasonable rules and regulations concerning the inspection and examination of records. It has nothing to do with the making of contracts for the sale of copies, let

alone entering into contracts that provide for only the restricted use of such copies. To read MCL 565.551(1) as granting this additional power is contrary to the principle that "a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).[5]

However, defendant correctly asserts that nothing in the plain language of MCL 565.551(2) precludes it from proposing and entering into record production contracts with specialized conditions. Rather, MCL 565.551(2) simply requires a register of deeds to take certain actions if an individual requests a reproduction of a record or file. It does not state that a register of deeds is prohibited from entering into agreements to provide copies of records under procedures different from those prescribed in MCL 565.551(2). In this regard, the trial court's analysis effectively reads into MCL 565.551(2) a restriction on defendant's powers that simply does not exist.

Further, defendant relies on MCL 45.3, which provides:

> Each organized county[6] shall be a body politic and corporate, for the following purposes, that is to say: To sue and be sued; to purchase and hold real and personal estate for the use of the county; to borrow money for the purpose of erecting and repairing county buildings, and for the building of bridges; *to make all necessary contracts, and to*

---

[5] Further, to so read the statute would be to go beyond the "liberal construction" required by Const 1963, art 7, § 34, discussed below.

[6] As noted earlier, the county through its commissioners has authority over defendant register of deeds and approved the contract the register of deeds proposed. Thus, the county exercised the powers and authority granted by MCL 45.3 and MCL 46.11, discussed below, through its register of deeds office.

*do all other necessary acts in relation to the property and
concerns of the county.* [Emphasis added.]

This Court, citing MCL 45.3, has stated that "Michigan
counties have been granted general power to enter into
contracts." *Bailey v Muskegon Co Bd of Comm'rs,* 122
Mich App 808, 826; 333 NW2d 144 (1983).

Defendant also relies on MCL 46.11, which enumer-
ates actions that a county board of commissioners may
take at a lawfully held meeting. MCL 46.11(l) provides
that the board may "[r]epresent the county and have
the care and management of the property and business
of the county if other provisions are not made." MCL
46.11(m) provides that a county board may "[e]stablish
rules and regulations in reference to the management
of the interest and business concerns of the county as
the board considers necessary and proper in all matters
not especially provided for in this act or under the laws
of this state."

Finally, defendant points out that these statutory
grants of authority must be broadly construed under
Const 1963, art 7, § 34, which provides:

> The provisions of this constitution and law concerning
> counties, townships, cities and villages shall be liberally
> construed in their favor. Powers granted to counties and
> townships by this constitution and by law shall include
> those fairly implied and not prohibited by this constitution.

Construing the statutes defendant relies on in light
of this constitutional directive,[7] we conclude that defen-
dant has the authority to propose and enter into "spe-

---

[7] We reject plaintiffs' argument that defendant has only the powers
expressly granted by statute or those that are "necessarily implied"
because that would ignore Const 1963, art 7, § 34 and its requirement
that provisions of law concerning counties must be "liberally construed in
their favor" and that powers granted to counties include those "fairly
implied."

cial arrangement" contracts for the provision of bulk rate paper copies or microfilm copies conditioned on a party agreeing to restrictions on the use of those copies. Simply as an exercise of the general power to contract, defendant has the authority to propose and enter into contracts in which it provides concessions, such as a reduced bulk rate fee or copies in microfilm form, in return for a purchaser agreeing to special conditions, such as a restriction on the use of the copies provided. Such a quid pro quo arrangement is a usual and inherent part of the contracting process authorized by MCL 45.3. Further, the negotiation of such contracts is within the broad statutory grant of authority provided for the care and management of the property and business concerns of a county. MCL 46.11(l); MCL 46.11(m).

In light of our conclusion that these statutes provide defendant authority to propose and enter into the type of contractual arrangement at issue here, there is no need to consider other statutory grounds alleged by defendant.

### B. FOIA

The pertinent FOIA request submitted by plaintiffs' counsel stated:

> Request is hereby made under the Michigan Freedom of Information Act, for copies of all microfilmed instruments recorded by your office from June 1, 2001 to the present.

Further, precedents like *In re Pub Service Comm Determination, No 2*, 204 Mich App 350, 353; 514 NW2d 775 (1994), cited by plaintiffs, are inapposite as they did not involve a county or county agency. So are precedents rendered before 1963, the year in which the constitutional requirement that powers granted to counties by law include those fairly implied became effective.

> The copies should be provided in the same microfilmed format that you utilize to record and maintain instruments in your office.

Although the parties fail to focus on this point, it is important to the resolution of this issue to first recognize that plaintiffs are not contending merely that they are entitled under the FOIA to obtain copies of records in some form, e.g., paper copies, from defendant. As discussed previously, it appears undisputed that defendant would allow plaintiffs, as part of the general public, to obtain paper copies of such documents at the $1 a page fee charged to the general public. Further, plaintiffs do not appear to challenge the propriety of the assessment of a $1 a page fee for paper copies for the purpose of this issue. Rather, plaintiffs are contending that they have a right to require that defendant provide them with copies of the records at issue in microfilm form[8] and to have the fee for such microfilm copies calculated under the provisions of the FOIA.

However, plaintiffs have pointed to nothing in the FOIA that gives them the right to insist on obtaining *microfilm* copies—as opposed to paper copies—of the records at issue. Plaintiffs seem to rely on the general right provided by the FOIA "to inspect, copy, or receive copies of the requested public record of the public body." MCL 15.233(1). While this language grants a general right to receive copies of public records, nothing in the language requires a public body to provide those copies in a microfilm format rather than in the form of a paper copy. To read in any such requirement would be contrary to the principle that "a court may read nothing

---

[8] Plaintiffs also contend that this result is required under the IORA, but, as discussed below, the IORA itself allows defendant the right to reproduce records "using a medium selected by the register of deeds." MCL 565.551(2)(a).

into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts, supra* at 63.

*Farrell v Detroit*, 209 Mich App 7; 530 NW2d 105 (1995), a case cited in plaintiffs' reply brief, does not require a different conclusion. Plaintiffs do not discuss *Farrell* in depth, but the implication of their argument seems to be that, because defendant keeps at least some of the records at issue in a microfilm format, it must provide microfilm copies of those records rather than paper copies if such a request is made. *Farrell* involved an FOIA request to the city of Detroit for a "computer tape" or "computer record" of certain information. *Id.* at 9-10. The city offered to provide a computer printout or "hard copy" of the information, and the trial court held that was sufficient to comply with the FOIA. *Id.* at 10. In reversing that decision, this Court concluded that the plaintiffs were entitled to have the "computer records" produced and not merely to obtain the information contained in the records. *Id.* at 10-11. In this regard, this Court quoted with apparent approval the statement in *Kestenbaum v Michigan State Univ*, 414 Mich 510, 558; 327 NW2d 783 (1982) (opinion of RYAN, J.), that, " '[a] paper printout is simply not a "copy" of a magnetic tape.' "[9] *Farrell, supra* at 13, quoting *Payne v Grand Rapids Police Chief*, 178 Mich App 203; 443 NW2d 481 (1989). In other words, a printout of information from a computer tape or file is not a photographic copy of the tape or file itself, but rather is a

---

[9] There was no majority opinion in *Kestenbaum*, which affirmed a decision of this Court by equal division. Of the six participating justices, two joined Justice RYAN's opinion, which would have reversed the decision of this Court while two joined Chief Justice FITZGERALD's opinion in favor of affirming the decision of this Court. See *Farrell, supra* at 12-13.

written compilation of information stored on the tape or file in a computerized form.

In contrast, a paper photocopy of a microfilm record is a photographic copy of the microfilm record itself. That is the case even though the copy is printed on a different medium than the original and, presumably, at an enhanced level of magnification. Accordingly, recognizing that a paper copy of a microfilm record is a copy of the microfilm record is not inconsistent with recognizing that a printout of information contained within a computer tape or file is not a copy of the computer tape or file. Thus, *Farrell* does not alter our conclusion that defendant was not required by the FOIA to provide plaintiffs with microfilm copies rather than paper copies of the records at issue.

Even if we were to conclude that the FOIA normally requires a public body to provide a microfilm copy of a record where the original of the record is kept by the public body on microfilm, we would further conclude, as did the trial court, that the IORA overrides such a general requirement. As set forth previously, the IORA specifically provides that, in response to a request for a reproduction of a record of a register of deeds, the register of deeds may reproduce the record "using a medium selected by the register of deeds." MCL 565.551(2)(a). Thus, the IORA allows a register of deeds to provide paper copies in response to a request for a copy of such records even if the register of deeds office keeps the original records on microfilm. To allow a party to require a register of deeds to provide a microfilm copy of a record would be plainly contrary to the statutory language. As defendant argues, if two statutes conflict, the specific statute prevails over the general one, even if it were enacted before the more general statute, as the IORA was here. *Bauer v Dep't of Trea-*

*sury,* 203 Mich App 97, 100; 512 NW2d 42 (1993). The FOIA broadly covers requests for copies of records from governmental entities, while MCL 565.551(2) pertains specifically to the narrower category of requests for reproductions of a record from a register of deeds. Thus, the IORA prevails as the more specific statute; it provides a register of deeds with the discretion to provide a paper copy of the type of record at issue notwithstanding any general requirement of the FOIA to the contrary.

### C. HEADLEE AMENDMENT

Plaintiffs argue that the $1 a per page cost of copies under the IORA violates the Headlee Amendment, which provides in pertinent part:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon. [Const 1963, art 9, § 31.]

We disagree.

Initially, we note that "when this section [wa]s ratified" in 1978, the IORA or its predecessor statutes, first enacted in the late 1800s, "authorized" a register of deeds to impose a fee for providing copies of records. Further, while the rate of the fee may have increased since 1978, the current $1 a per page authority is provided by the Legislature through statute, not as a result of any action by a "unit of local government." See MCL 600.2567(1)(b). Thus, even were we to conclude that the copying cost at issue here is a "tax" under the Headlee Amendment, we question whether that amendment would be violated under the facts of this case.

However, we need not reach these issues because the fee charged by a register of deeds office for providing a copy of a document cannot be considered a "tax" under any reasonable meaning of the term. The task of a court in interpreting the Michigan Constitution "is to give effect to the common understanding of the text . . . ." *Lapeer Co Clerk v Lapeer Circuit Court*, 469 Mich 146, 155; 665 NW2d 452 (2003). The common understanding of a "tax" is that it involves an essentially mandatory assessment imposed by a governmental entity either on property owned by a party or on a transaction engaged in by a party. The voluntary sale and purchase of copies of records from a register of deeds office simply does not involve the imposition of a tax. Defendant is not acting as a governmental entity imposing a mandatory assessment on a transaction when it requires the payment of $1 a page for providing copies of records to members of the general public; rather, it is simply acting as the seller in the transaction.

Plaintiffs assert that Michigan courts have consistently determined "a fee" to be a tax whenever the revenue generated by such a fee exceeds the cost of the service. However, precedents cited by plaintiffs do not reasonably support a conclusion that the charge a governmental entity imposes to provide a photocopy of a document as part of a voluntary transaction constitutes a tax. Two of those precedents, *Beachlawn Bldg Corp v St Clair Shores*, 370 Mich 128; 121 NW2d 427 (1963), and *Merrelli v St Clair Shores*, 355 Mich 575; 96 NW2d 144 (1959), involved fees for building permits that were held to be "invalid because the revenue derived therefrom was in excess of the cost of issuing the license and regulating the business to which it applied." *Beachlawn, supra* at 130 (articulating holding in *Merrelli*). However, these cases predate the Headlee Amendment and had nothing to do with determining

what constitutes a "tax" generally or under that amendment. Further, the fee for a building permit differs from the charge for a copy of a document in that it is effectively an assessment imposed on a party for that party to be able to undertake construction. It does not involve an exchange of money in return for provision of a tangible service as occurs when a party purchases a copy of a record from a register of deeds office. Thus, *Beachlawn* and *Merrelli* do not support plaintiffs' claim that the copying fee here is a tax under the Headlee Amendment.

Plaintiffs also cite *Iroquois Prop v East Lansing*, 160 Mich App 544; 408 NW2d 495 (1987). However, that case does not reasonably support plaintiffs' apparent position that a fee charged by a governmental entity for provision of a service necessarily constitutes a tax if it garners more revenue than it costs to provide the service. *Iroquois Properties* involved the adoption of a city ordinance that required certain users of the city's garbage collection service to pay a fee for that service. This Court noted that a number of the affected owners "chose to discontinue city service and rely instead on private haulers." *Id.* at 550. Thus, it is apparent that, as with the fee paid for a copy of a record from a register of deeds office, payment of the fee was essentially a voluntary payment in return for provision of a specific service. This Court reversed the trial court's ruling that the garbage collection fee was an illegal tax, holding that the fee could not be considered a tax because the revenue generated by the fee did not appear to have ever exceeded the cost of the service rendered. *Id.* at 562-564. However, it does not follow from this that the converse is true, i.e., that the garbage fee would have constituted a tax if it had generated more revenue than the cost of collecting garbage from those who paid the fee. Rather, this Court simply did not need to decide

that question. Instead, this Court noted that "the city's garbage collection fee is not an involuntary exaction for general governmental services, but, rather, is imposed solely to defray the costs of a specific service." *Id.* at 564. This language reinforces our conclusion that voluntary payment for a specific service, be it garbage collection or obtaining a copy of a document, does not constitute payment of a tax.

Plaintiffs also cite *Bolt v City of Lansing*, 459 Mich 152, 158-159; 587 NW2d 264 (1998), which centered on the question whether a "storm water service charge" imposed by a city constituted a "tax" that violated the Headlee Amendment, Const 1963, art 9, § 31, or a "user fee" that was not affected by the Headlee Amendment. The storm water service charge was imposed on real property throughout the city to obtain funds to finance a project to separate combined sanitary and storm sewers in the city. *Id.* at 154-158. In considering whether this charge constituted a user fee or a tax, our Supreme Court articulated "three primary criteria to be considered when distinguishing between a fee and a tax." *Id.* at 161. Our Supreme Court explained that the "first criterion is that a user fee must serve a regulatory purpose rather than a revenue-raising purpose"; the second criterion "is that user fees must be proportionate to the necessary costs of the service"; and the third criterion is "voluntariness." *Id.* at 161-162. Plaintiffs attempt to apply these factors to the present case to analyze whether the charge at issue for copies of records from the register of deeds office involves a tax. However, it is apparent that the *Bolt* test is only designed to distinguish between user fees and taxes on real property and has no applicability in the present context. In particular, *Bolt* involved an assessment against real property, a financial charge often viewed as a tax. In contrast, the present case involves a charge for the

provision of a tangible service, i.e., providing a physical copy of a document. Further, the first criterion of the *Bolt* test regarding whether a fee involves a "regulatory purpose" is a sensible consideration with regard to fees related to real property parcels that are, of course, subject to various municipal regulations. *Id.* at 161. It is not sensibly applied in the context of a party purchasing a copy of a record from a register of deeds office, which is not a matter that involves governmental regulation of private property. Put simply, the *Bolt* test is designed to distinguish between assessments on real property that necessarily are either taxes or user fees. It has no application to a voluntary payment in a transaction, like the purchase of a copy of a record, that does not involve any mandatory assessment.

Plaintiffs also cite *Vernor v Secretary of State*, 179 Mich 157; 146 NW 338 (1914). Plaintiffs refer to language indicating that, in order to be considered a regulatory fee rather than a tax, a license fee must not be primarily a means of producing revenue. *Id.* at 167. *Vernor* involved the constitutionality of a statute imposing a registration fee on automobiles. *Id.* at 161-162. Although *Vernor* predated the Headlee Amendment, our Supreme Court's discussion of the distinction between a regulatory fee and a tax was pertinent to its holding that the statute was unconstitutional because taxation was not within the scope of the title of the act. *Id.* at 170. It is apparent that, as a mandatory assessment on automobiles, the assessment at issue in *Vernor* was either a tax or a regulatory fee. Again, as with *Bolt*, we conclude that *Vernor* is not instructive in the present case. Unlike an automobile assessment, the fee charged for making a copy of a document is neither a regulatory fee nor a tax, but rather is simply the direct purchase price for the provision of a service as part of a voluntary transaction.

In sum, we conclude that a payment made to obtain a copy of a record from a register of deeds office as part of a voluntary purchase transaction does not constitute a tax. Thus, it cannot constitute an illegal tax in violation of the Headlee Amendment.

### CONCLUSION

We reverse the trial court order to the extent that it granted summary disposition in favor of plaintiffs. We remand for entry of an order granting defendant summary disposition regarding all plaintiffs' claims. We do not retain jurisdiction. No costs should be imposed, a public question having been presented.