DEPARTMENT OF AGRICULTURE
v APPLETREE MARKETING, LLC

Docket No. 277743. Submitted September 3, 2008, at Grand Rapids. Decided September 16, 2008, at 9:00 a.m. Leave to appeal sought.

The Department of Agriculture and the Michigan Apple Committee brought an action in the Kent Circuit Court against Appletree Marketing, L.L.C., and its manager and sole member, Steven Kropf, after Appletree failed to remit to the Michigan Apple Committee assessments Appletree collected from Michigan apple orchards pursuant to the Agricultural Commodities Marketing Act (ACMA), MCL 290.651 *et seq*. The plaintiffs alleged a violation of the ACMA by Appletree and common-law conversion and statutory conversion by Appletree and Kropf. The plaintiffs moved for summary disposition with regard to all the claims. The defendants consented to a judgment against Appletree for its failure to remit the assessments. However, the defendants contended that treble damages were not available to the plaintiffs under the ACMA and that the ACMA provided the exclusive remedies available to the plaintiffs. The defendants also denied that any conversion occurred. The court, George S. Buth, J., granted the plaintiffs' motion for summary disposition with regard to Appletree's liability under the ACMA, denied the plaintiffs' request for treble damages, and dismissed with prejudice the claims regarding common-law conversion and statutory conversion, ruling that the ACMA provided the exclusive remedies available to the plaintiffs. The plaintiffs appealed.

The Court of Appeals *held*:

1. Absent its obligations under the ACMA, Appletree was under no duty to remit the assessments to the Michigan Apple Committee. The ACMA sets forth new rights and responsibilities not found in the common law and prescribes new remedies for those rights. Therefore, the remedies conferred by the ACMA are the exclusive remedies for a violation of the ACMA.

2. The plaintiffs' common-law and statutory conversion claims do not exist without the ACMA because any duty to remit the assessments is a duty imposed by the ACMA. The plaintiffs are barred from seeking damages under claims of common-law and

statutory conversion because the ACMA provides the exclusive remedies for the violation of duties imposed under the ACMA.

Affirmed.

ACTIONS — AGRICULTURAL COMMODITIES MARKETING ACT — REMEDIES.

The remedies provided in the Agricultural Commodities Marketing Act are the exclusive remedies for a violation of the act; claims alleging common-law conversion or statutory conversion are barred where the claims relate to duties imposed under the Agricultural Commodities Marketing Act (MCL 290.651 *et seq.*).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *White, Schneider, Young & Chiodini, P.C.* (by *James J. Chiodini* and *Shirlee M. Bobryk*), Special Assistant Attorneys General, for the plaintiffs.

*Miller Johnson* (by *J. Scott Timmer*) for the defendants.

Before: METER, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM. Plaintiffs, Department of Agriculture and Michigan Apple Committee, appeal as of right the trial court's order granting in part and denying in part their motion for summary disposition. Because the remedies conferred by the Agricultural Commodities Marketing Act (ACMA), MCL 290.651 *et seq.*, are the exclusive remedies for a violation of the act, we affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Steven Kropf was the manager and the sole member of defendant Appletree Marketing, L.L.C. (Appletree). Organized in 2001, Appletree purchased or otherwise acquired apples from Michigan apple orchards. It then marketed, sold, and distributed the apples. Kropf knew that, pursuant to the ACMA, Appletree was obligated to remit assessments to the Michigan Apple Committee.

Pursuant to the ACMA, Appletree deducted the assessments from the gross amounts it owed the apple orchards from which it purchased or otherwise acquired apples in 2004 and 2005. However, it failed to remit to the Michigan Apple Committee any of the deducted assessments for the 2004 and 2005 crops. Appletree failed to remit the assessments because it used the assessments to pay other expenses.

In April 2005, the Michigan Apple Committee filed a complaint with the director of the Department of Agriculture asserting that Appletree failed to remit the entire amount of the assessments due for the 2004 apple crop. An investigation confirmed the assertion, and by letter sent by certified mail, the director demanded that Appletree remit the $26,305.98 in assessments owed for the 2004 crop.

In February 2006, the Michigan Apple Committee filed another complaint with the director of the Department of Agriculture, this time asserting that Appletree failed to remit the assessments due for the 2005 apple crop. Again, an investigation confirmed the assertion, and the director, by letter sent by certified mail, demanded that Appletree remit the $28,878.66 owed in assessments.

After Appletree failed to remit the assessments, plaintiffs sued Appletree and Kropf. Plaintiffs asserted a breach of the ACMA against Appletree and set forth claims of common-law conversion and statutory conversion, MCL 600.2919a, against Appletree and Kropf.

Plaintiffs thereafter moved for summary disposition under MCR 2.119(C)(9) and (10) on all three claims. Plaintiffs asserted that summary disposition was proper on the ACMA claim because Appletree conceded that it had violated the ACMA and did not contest the

amount owed. Plaintiffs argued that summary disposition was proper on the common-law and statutory conversion claims because Appletree used the assessments, which, pursuant to the ACMA, were funds it held in trust for the Michigan Apple Committee, for its own purposes. According to plaintiffs, Kropf could be held personally liable for the converted funds because, as the manager of Appletree, he was responsible for authorizing the financial disbursements of the company. Plaintiffs pointed out that it was well established that when a corporation commits a tortious act, its officers and agents are liable for their active participation in the tort.

Defendants consented to a judgment of $55,184.64 against Appletree for its failure to remit the assessments for the 2004 and 2005 apple crops. However, they contended that treble damages were not available to plaintiffs. According to defendants, because the ACMA created new rights and prescribed particular remedies, the remedies identified in the ACMA, which did not include treble damages, were the exclusive remedies available to plaintiffs. In addition, defendants argued that there was no conversion of the assessments by either Appletree or Kropf. First, because Appletree held the assessments with the consent of the Michigan Apple Committee, Appletree did not engage in any act of conversion when it failed to remit the assessments. Second, plaintiffs did not present any evidence that Kropf individually took the money that Appletree was required to remit to the Michigan Apple Committee.

The trial court granted in part and denied in part plaintiffs' motion. Because there was no genuine issue of material fact that Appletree failed to remit the assessments and defendants failed to state a defense, the trial court granted plaintiffs' motion with regard to

Appletree's liability under the ACMA. However, without deciding whether defendants converted the assessments, the trial court held that plaintiffs were not entitled to treble damages. According to the trial court, plaintiffs were limited to the remedies provided in the ACMA, which did not include treble damages. The trial court entered a final judgment against Appletree in the amount of $77,051.23.[1] Plaintiffs' claims of common-law and statutory conversion were dismissed with prejudice.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 663; 697 NW2d 180 (2005). A summary disposition motion under MCR 2.116(C)(9) tests the sufficiency of a defendant's pleadings by accepting all well-pleaded allegations as true. *Id.* "If the defenses are so clearly untenable as a matter of law that no factual development could possibly deny plaintiff's right to recovery, then summary disposition under this rule is proper." *Village of Dimondale v Grable*, 240 Mich App 553, 564; 618 NW2d 23 (2000) (quotation marks and citations omitted). Summary disposition is proper under MCR 2.116(C)(10) if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Tyson Foods, Inc v Dep't of Treasury*, 276 Mich App 678, 683; 741 NW2d 579 (2007). A genuine issue of material facts exists when, after the documentary evidence is viewed in the light most favorable to the nonmoving party, there remains an issue upon which reasonable minds could differ. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

---

[1] This amount included the unpaid assessments, statutory interest, attorney fees, audit expenses, and other costs.

We also review questions of statutory interpretation de novo. *Neal v Wilkes*, 470 Mich 661, 664; 685 NW2d 648 (2004). Our primary task in construing a statute is to ascertain and give effect to the intent of the Legislature. *Id.* at 665.

### III. ANALYSIS

On appeal, plaintiffs claim the trial court erred in determining that the remedies provided in the ACMA were the exclusive remedies for a violation of the act. Plaintiffs contend that because there existed at common law a remedy for the conversion of another's property, the ACMA does not create new rights and remedies. Therefore, the remedies provided in the ACMA are cumulative, rather than exclusive, remedies.

### A

The Legislature enacted the ACMA, which became effective in 1966, for "the purpose of providing a procedure whereby marketing programs could be established for a wide variety of Michigan's agricultural products." *Dukesherer Farms, Inc v Director of Dep't of Agriculture (After Remand)*, 405 Mich 1, 9; 273 NW2d 877 (1979). The programs for each commodity are funded by an assessment collected from each producer of the commodity, MCL 290.655(a); *League Gen Ins Co v Michigan Catastrophic Claims Ass'n*, 435 Mich 338, 348; 458 NW2d 632 (1990), and are administered by a commodity committee, see MCL 290.657.

It is the duty of those dealing with the commodity producer to collect and remit the assessments to the commodity committee.

> In the case of a marketing program that provides for the imposition of an assessment, the processors, distributors,

or handlers dealing with the producer shall collect the assessment from the producer by deducting the assessment from the gross amount owing to the producer and shall remit the assessment . . . to the committee . . . . A processor, distributor, or handler who fails to deduct or remit the assessment is liable to the committee for any assessments not deducted or remitted. [MCL 290.655(c).]

"All assessments collected or deducted shall be considered trust funds and be remitted quarterly or more frequently if required . . . to the appropriate committee." MCL 290.655(e).

The ACMA established the following procedure for the commodity committee and the director of the Department of Agriculture to collect an assessment that a processor, distributor, or handler has failed to remit:

A committee may file a written complaint with the director documenting that a processor, distributor, handler, or producer has failed to deduct or remit any assessment due to the committee pursuant to a marketing program. Upon receipt of such a complaint, the director shall conduct an investigation of the allegations. If, after investigation, the director finds that the processor, distributor, handler, or producer has failed to deduct or remit an assessment to the committee, the director shall request by certified mail the processor, distributor, handler, or producer to remit the assessment within 10 days after the director determines that a deduction or remittance was not made. In the case of the failure to deduct an assessment, the director shall compute the amount that reasonably should have been deducted and impose an assessment in that amount. If the assessment is not remitted within 30 days after the request or is not in compliance with a written agreement for full payment, the director may file an action in a court of competent jurisdiction to collect the assessment. . . . In any action to recover an assessment under this subsection, if the director prevails, the court shall award to the director all costs and expenses in

bringing the action, including, but not limited to, reasonable and actual attorney fees, court costs, and audit expenses. [MCL 290.655(f).][2]

The ACMA also contains civil and criminal enforcement provisions. MCL 290.669 provides:

The director may institute an action necessary to enforce compliance with this act, a rule promulgated under this act, or a marketing agreement or program adopted under this act and committed to his or her administration. In addition to any other remedy provided by law, the director may apply for relief by injunction to protect the public interest without being compelled to allege or prove that an adequate remedy at law does not exist.

MCL 290.673 provides:

(1) Except as provided in subsections (2) and (3), a person who violates this act is guilty of a misdemeanor punishable by a fine of up to $1,000.00 a day.

(2) A member of the board who intentionally violates section 7(8) shall be subject to the penalties prescribed in the open meetings act, 1976 PA 267, MCL 15.261 to 15.275.

(3) If the board arbitrarily and capriciously violates section 7(9), the board shall be subject to the penalties prescribed in the freedom of information act, 1976 PA 442, MCL 15.231 to 15.246.

B

If "a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only." *Monroe Beverage Co, Inc v Stroh Brewery Co,* 454 Mich 41, 45; 559 NW2d 297 (1997) (quotation marks and citation

---

[2] In addition, an unpaid assessment is subject to an interest charge of one percent a month. MCL 290.672.

omitted).[3] However, "[w]hen a statute provides a remedy for enforcement of a common-law right, the statutory scheme is merely cumulative and not exclusive." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 201; 729 NW2d 898 (2006) (holding that the plaintiffs' claims for unjust enrichment were not barred by the availability of relief under the public works bonding act, MCL 129.201 *et seq.*, because "[a] plaintiff enjoyed the right at common law to recover in quantum meruit from a defendant who had been unjustly enriched").

At common law there has always been a remedy for those whose property was converted. See, e.g., *Moore v Andrews*, 203 Mich 219, 232; 168 NW 1037 (1918) ("If it shall, however, turn out that the money taken by the defendant was the money of the corporation at all times, as claimed by the plaintiff, the same having been demanded, we are of the opinion that trover would lie for its conversion."). However, before the ACMA took effect in 1966, processors, distributors, or handlers of apples and other commodities grown in Michigan had no duty to deduct an assessment from the gross amount owed to a commodity producer and remit the assess-

---

[3] In *Pompey v Gen Motors Corp*, 385 Mich 537, 552 n 14; 189 NW2d 243 (1971), our Supreme Court stated that this rule of exclusivity was subject to two qualifications: if the statutory remedy is plainly inadequate or if a contrary intent clearly appears, the statutory remedy will not be deemed exclusive. Recently, however, the Supreme Court noted that the principle —"that some quantum of additional remedy is permitted where a statutory remedy is 'plainly inadequate' "—was announced in dicta in *Pompey*, has never appeared in a majority opinion of the Court, and is inconsistent with subsequent caselaw. *Lash v Traverse City*, 479 Mich 180, 192 n 19; 735 NW2d 628 (2007). Plaintiffs do not allege that the remedies provided in the ACMA were plainly inadequate or that the language of the ACMA expresses a clear intent that the Legislature did not intend the remedies contained in the ACMA to be the exclusive remedies for a violation of the act.

ment to the commodity committee. Absent its obligations under the ACMA, Appletree was under no duty to remit the assessments to the Michigan Apple Committee. Thus, the ACMA sets forth new rights and responsibilities not found in the common law. In addition, the ACMA sets forth mechanisms by which the director of the Department of Agriculture may sue for an unpaid assessment or to ensure compliance with the ACMA. MCL 290.655(f); MCL 290.669. Accordingly, because the ACMA sets forth new rights and responsibilities not found in the common law and prescribes new remedies for those rights, the remedies conferred by the ACMA are the exclusive remedies for a violation of the act. *Monroe Beverage Co, supra.*

C

Nonetheless, plaintiffs argue that even if the remedies contained in the ACMA are the exclusive remedies for a violation of the act, their claim for common-law conversion is not barred because the claim provides a complementary, rather than a conflicting, remedy to those in the ACMA.[4] Similarly, plaintiffs argue that

---

[4] To support their argument, plaintiffs rely on the following sentence from *Kraft v Detroit Entertainment, LLC,* 261 Mich App 534, 544 n 5; 683 NW2d 200 (2004): "In other words, if a statute provides for an exclusive remedy or otherwise limits or bars application of other laws, including the common law, any conflicting common law simply cannot apply." Plaintiffs' reliance on this sentence is misplaced. The Court was stating "[i]n other words" the "well-established legal principle that the Legislature may abrogate the common law." *Id.* At issue in *Kraft* was whether the Michigan Gaming Control and Revenue Act (MGCRA), MCL 432.201 *et seq.,* "preempted" the plaintiff's common-law claims of fraud and unjust enrichment. The Court concluded that because the common-law claims would prohibit that which was permitted by the MGCRA, the common-law claims were inconsistent with the MGCRA and were, therefore, preempted. *Kraft, supra* at 551. In this case, there is no issue whether the ACMA "preempted" plaintiffs' common-law claim for con-

their statutory conversion claim is not barred because the Legislature, through the Revised Judicature Act, MCL 600.101 *et seq.*, and specifically MCL 600.2919a(2), which states that "the remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise," provided a separate statutory means for redress. See, e.g., *Faulkner v Flowers*, 206 Mich App 562; 522 NW2d 700 (1994) (a plaintiff may simultaneously pursue claims under the Whistleblowers' Protection Act, MCL 15.361 *et seq.*, and the wage and fringe benefits act, MCL 408.471 *et seq.*).

We reject both of plaintiffs' arguments for the same reason. Conversion is "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992). Plaintiffs' claim that Appletree wrongfully exerted domain over the assessments is based entirely on Appletree's duty, imposed by the ACMA, to remit the deducted assessments to the Michigan Apple Committee. In other words, plaintiffs' common-law and statutory conversion claims do not exist without the ACMA. Because the remedies conferred by the ACMA are the exclusive remedies for a violation of the ACMA, plaintiffs are barred from seeking damages for Appletree's violation under claims of common-law and statutory conversion. *Monroe Beverage Co, supra.*[5] We affirm the trial court's order granting in part and denying in part plaintiffs' motion for summary disposition.[6]

---

version. If the Legislature had not enacted the ACMA, plaintiffs would have no basis for a claim of conversion against defendants.

[5] Consequently, we need not address plaintiffs' claim that the undisputed facts establish that defendants converted the assessments.

[6] We reject plaintiffs' contention that the trial court, upon finding that "the [ACMA] applies to defendants as distributors of apples," erred by

Affirmed.

not holding Kropf personally liable under the ACMA. In their complaint, plaintiffs did not assert a violation of the ACMA by Kropf. The only claims asserted against Kropf were for common-law and statutory conversion.